UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIAM LOWMAN and RYAN CAMPBELL,

        Plaintiffs,

v.                                Case No: 6:22-cv-2058-PGB-LHP

UNITED STATES OF AMERICA,

        Defendant.
_____/

## ORDER

This cause is before the Court on the Defendant's Motion for Partial Summary Judgment. (Doc. 43 (the "**Motion**")). The Plaintiffs submitted a Response (Doc. 44), and the Defendant filed a Reply. (Doc. 45). Upon consideration, the Motion is denied.

**I.  BACKGROUND**

The Plaintiffs as co-trustees of the Taylor Family Irrevocable Trust (the "**Taylor Trust**") sued the United States of America (hereafter "**the Defendant**") for the recovery of federal income tax and interest allegedly erroneously assessed and collected from the Plaintiffs for the 2015 tax year.[1] (Doc. 1). The Coronavirus Aid, Relief and Economic Security Act ("**CARES Act**") provided a 5-year carryback period for net operating losses arising between December 31, 2017 and January 1,

---

[1] The action is commenced under 26 U.S.C. § 7422(a) and 28 U.S.C. §§ 1340 and 1346(a)(1). (Doc. 1, p. 1).

2021. (*Id.* at p. 2). The Plaintiffs paid $3,112,639 for the 2015 tax year, and in 2020 they sought a refund of $1,095,292 which they claim resulted from operating losses carried back from their 2018 and 2019 tax returns. (*Id.* at p. 1). The dispute before the Court centers on whether the real property acquired by Entrenext, LLC, of which the Taylor Trust owns 99%, was used as a secondary residence by the Taylors or was used in the course of Entrenext's business. (Doc. 43-1, ¶¶ 12, 18). If the former is true, the Taylors are not entitled to the tax refund, but if the latter is true, they are owed $1,103,672.30. (Doc. 43, p. 7).

## II.  LEGAL STANDARD

To prevail on a summary judgment motion on any claim or issue, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case," and "[a]n issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

The movant bears the initial burden of proving that no genuine factual dispute exists. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Where the nonmovant bears the burden of proving the issue at trial, the moving party will satisfy this initial burden "merely by pointing out to the district court that there is an absence of evidence to support

2

an essential element of the non-moving party's case." *Thurmon v. Ga. Pac., LLC*, 650 F. App'x 752, 756 (11th Cir. 2016)[2] (citing *Celotex*, 477 U.S. at 325).

Once the movant shows there is no genuine dispute of material fact, the burden shifts to the non-movant to prove that a genuine factual dispute exists which would preclude entry of summary judgment. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To survive summary judgment, the non-moving party "must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Id*. The non-movant must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatories, or other materials." FED. R. CIV. P. 56(c)(1)(A). If the non-moving party fails to identify specific record evidence supporting its position, the court must enter summary judgment. FED. R. CIV. P. 56(a).

Importantly, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1166 (11th Cir. 2013)). At the same time, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

3

a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Ultimately, summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

There is no dispute over the legal framework that applies in determining whether losses sustained by a taxpayer upon the sale of property is deductible as a business loss. Under 26 U.S.C. § 262 "[l]osses attributable to the sale of a family residence are nondeductible personal losses." *Christensen v. Comm'r*, No. 20962-80., 1984 Tax Ct. Memo LEXIS 470, at *5-6 (T.C. Apr. 23, 1984) (citing *Austin v. Comm'r*, 298 F.2d 583, 584 (2d Cir. 1962), *aff'g* 35 T.C. 221 (1960). On the other hand, the Tax Code allows deductions for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). Therefore, for an expense to be deductible under § 162(a), it "must be one that has a business origin." *McKenny v. United States*, 973 F.3d 1291, 1297 (11th Cir. 2020) (quoting *United States v. Gilmore*, 372 U.S. 39, 45 (1963)). The taxpayer claiming a business-expense deduction under § 162(a) has the burden of proof. *Ray v. Comm'r*, 13 F.4th 467, 477 (5th Cir. 2021) (citing *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992).

4

Ultimately, "[t]he question of whether the taxpayer is engaged in a trade or business is one of fact." *Stanton v. Comm'r*, 399 F.2d 326, 330 (5th Cir. 1968); *Provitola v. Comm'r*, 859 F. App'x 474, 477 (11th Cir. 2021). To answer this question, the Court "takes into account a taxpayer's intent and all other relevant facts and circumstances surrounding the activity." *Schmerling v. Comm'r*, No. 342-18S, 2023 Tax Ct. Summary LEXIS 14, at *7 (T.C. Apr. 4, 2023).

The Defendant contends the Taylors treated the property as their residence, because their minor children attended school in Tiburon and lived in the property for an academic year and continued to visit the property "every now and then" in the summers following. (Doc. 43, p. 4). The Defendant also argues the Taylors did not pay Entrenext rent to use the property or enter into a lease. (*Id.* at p. 5). And despite having owned the property for about six years the Taylors identified only 16 people who visited the property for a business purpose. (*Id.*). The Defendant further notes the lack of records relating to the scheduling of guests or advertising its availability for use by business associates. (*Id.* at p. 6). Thus, the Defendant concludes the Taylors used the property as a second residence and not as a business property. (*Id.* at p. 13).

The Defendant's recitation of the facts omits that Entrenext paid to convert the home from a residence to a business space. That is, the Plaintiffs testified that the property was a three-story home, but Entrenext converted the bottom floor to an office space, the middle floor to a conference room and media space with a bedroom, while the top story was used for entertaining business guests and

5

employees of Tropo and Sightbound. (Doc. 44, pp. 7–8). Entrenext invested in Tropo and Sightbound, and Mr. Taylor was responsible for Tropo-related projects.[3] (*Id.* at p. 6). Mr. Taylor dedicated between 50-60 hours per week to those projects until Tropo was sold to Cisco. (*Id.*). The subject property was ultimately selected based in part on its proximity to Silicon Valley. (*Id.* at p. 7).

The Taylors permanent residence was in Florida, and Mr. Taylor used the subject property between two and four nonconsecutive months per year, while Mrs. Taylor estimated that she spent one month at the property in 2013 and between three and five months in 2014 and 2015. (*Id.* at pp. 8–9). The rest of the time the property was vacant. (*Id.* at p. 9). The Plaintiffs identified sixteen individuals who attended business meetings at the subject property, but all records identifying exact dates were lost when Tropo was acquired by Cisco. (*Id.* at p. 9 n.44). Mr. Taylor testified that most business guests attended more than one meeting at the Mt. Tiburon Property. (*Id.* at p. 9 n.46).

The Defendant challenges the *quality* of proof offered by the Plaintiffs, arguing that the failure to produce applications, leases, rental agreements, logs, and so forth, is dispositive to whether the property was a second home occasionally used for business. (Doc. 43, p. 12). The Court disagrees. The Plaintiffs' testimony about the renovations to the property and the frequency and purpose of business guests presents a material issue of fact. The Defendant thus fails to carry its burden

---

[3]   Entrenext invested in technology start-ups based in San Francisco, including Sighthound, Inc. and Voxeo, Inc. (Doc. 44, p. 3). The latter was spun out and renamed Tropo, Inc. (*Id.* at p. 5).

6

of proving the absence of a material issue of fact, and the motion for partial summary judgment is denied.

## IV.  CONCLUSION

For these reasons, the Defendant's Motion for Partial Summary Judgment (Doc. 43) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 22, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties